(No. 78-CC-0958–

Latin American Task Force, Robinson-Turner Joint Venture, Claimant, *v.* The State of Illinois, Respondent.

*Opinion filed December 14, 1981.*

Wilson & McIlvaine (John D. Lien and Robert K. Olendzki, of counsel), for Claimant.

Tyrone C. Fahner, Attorney General (J. Janone, Assistant Attorney General, of counsel) for Respondent.

Poch, J.

This cause is before the Court on an agreed statement of facts of the parties. The statement is set forth below and we adopt the factual matter set forth therein:

*Agreed Statement of Facts*

Now come, the Claimant, LATF-Robinson-Turner Joint Venture, by its attorneys, Wilson & McIlvaine, and the Illinois Attorney General, to stipulate and agree to the

following statements of fact, to stipulate and agree that the following facts constitute all facts which are relevant, material and admissible evidence herein.

1. This is an action for an alleged breach of contract.

2. This Court has jurisdiction pursuant to section 8(b) of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.8).

3. The Claimant, LATF-Robinson-Turner Joint Venture, is an Illinois joint venture comprised of Latin American Task Force, an Illinois not-for-profit corporation, The Robinson Group, an Illinois corporation, and Turner Construction Company, a New York corporation which is authorized and is conducting business in the State of Illinois.

4. The Respondent, Capital Development Board, is an administrative agency of the State of Illinois.

5. In February of 1975, at the invitation of the Respondent, the Claimant submitted proposals to serve as construction manager for each of the following construction projects:

| PROJECT | PROJECT NO. |
|---|---|
| Pilsen Senior High School | 761-031-014 |
| Richards Vocational High School | 761-031-015 |
| Englewood Senior High School | 761-031-003 |
| Parker Senior High School | 761-031-001 |

6. Also in February of 1975 and also at the Respondent's invitation, the Claimant submitted a combined proposal to provide construction management services on all of the four projects.

7. The Respondent accepted the Claimant's combined proposal.

8. The Respondent and the Claimant, through their authorized representatives, in Chicago, Illinois, entered into a written contract dated March 1, 1975, for full and adequate consideration in which the Claimant agreed to perform construction management services for all four of the above references projects (hereinafter the Contract).

9. In consideration for the Claimant's services, the Respondent agreed to pay to the Claimant a fixed fee for the Claimant's services and to reimburse the Claimant for certain costs and expenses.

10. After the contract had been executed the Claimant submitted a proposed insurance plan to Respondent. The Respondent's response was summarized in a letter from its chief legal advisor, Ronald L. Maksym, which stated in relevant part:

"To confirm our recent telephonic report, we advise that the insurance program for the joint venture as presented by the Insurance Department of Travis Realty Company and Aetna dated July 10, 1975, is approved insofar as it pertains to coverage for Workmen's Compensation and Employer's Liability, Public Liability and Property Damage, Automobile Liability, Completed Operations, Umbrella Excess, Owner's Protective and Builder's Risk. We understand that the Builder's Risk will be on a reimbursement basis and that the proposal is modified so that the 24-hour watchman service will not be required, the requirement being offset by a $5,000 deductible with respect to burglary coverage."

11. After receiving the letter from Ronald L. Maksym, the Claimant incurred the following insurance expenses:

| TYPE | COST |
| --- | --- |
| Builder's risk insurance | $43,785.00 |
| General liability insurance | $35,591.00 |
| Excess coverage insurance | $10,271.00 |
| Completed operations insurance | $ 1,845.00 |

12. It is customary for owners, and not construction managers, to purchase builder's risk insurance and for the owners to pay the premiums directly.

13. At the time when the Respondent accepted the Claimant's proposal, the Respondent did not intend to purchase builder's risk insurance.

14. The Respondent subsequently decided that it did wish to purchase builder's risk insurance. Rather than purchase builder's risk insurance itself, the Respondent asked the Claimant to purchase the insurance for the Respondent and the Respondent agreed to reimburse the Claimant for that expense.

15. The Respondent has reimbursed the Claimant for the cost of purchasing builder's risk insurance.

16. Beginning in November of 1975 the Claimant submitted invoices seeking payment for a portion of its fee as well as for reimbursable expenses that had been incurred. Insurance expenses owing to Travis Realty for general liability and excess coverage insurance were listed as reimbursable expenses on those invoices.

17. The Respondent received and paid the invoices in due course as in the full amount requested until July of 1976.

18. In July of 1976 the Respondent refused to pay those portions of the Claimant's invoices which sought reimbursement for the cost of general liability, excess coverage and completed operations insurance. The Respondent also began to withhold from its subsequent payments to the Claimant an amount equal to the total previously paid as reimbursement for those types of insurance, contending that the Claimant was not entitled to reimbursement under the terms of the contract. Con-

sequently, the Respondent has not reimbursed the Claimant for any portion of the expenses incurred for general liability, excess coverage, or completed operations insurance, despite the Claimant's repeated demands for payment.

19. If the Court finds that the Respondent is obligated to reimburse the Claimant for the cost of general liability, excess coverage, and completed operations insurance, the Claimant is entitled to judgment in the amount of $47,707.00.

20. After the contract was executed, the Respondent decided to suspend indefinitely the Englewood and Richards projects. The parties therefore entered into extensive negotiations to reduce the amount of the Claimant's fee commensurate with the reduction in services to be provided and commensurate with the reduction in costs which were to have been paid by the Claimant out of its management fee.

21. During the negotiations to modify the contract the parties discussed all of the particular costs which were to be paid out of the Claimant's fee. The parties did not discuss reimbursable expenses because their cost savings would automatically accrue to the Respondent.

22. During these negotiations the cost of general liability, excess coverage and completed operations insurance was never discussed.

23. Following the negotiations, the parties entered into a modification agreement to eliminate Englewood and Richards High Schools from the contract and to reduce the Claimant's fee.

24. Premiums for general liability, excess coverage and completed operations insurance are all computed based upon the cost of construction.

25. Except for the Respondent's disputed contentions that the Claimant was not authorized to incur the subject insurance premiums as reimbursable expenses, the Claimant has at all times performed all things required of it under the terms of the contract.

The issue before the Court is whether the letter of the chief legal advisor for Respondent was sufficient authorization under the terms of the contract.

This matter was heard on oral argument before the Court as well as before the commissioner. Briefs were filed.

The Court having heard arguments, reviewed the briefs as well as the report of the commissioner:

Finds that the contract establishes that the insurance premiums were not expenses which the Claimant was to incur as part of its basic fee, but were instead reimbursable expenses, subject to but one condition. The only contractual condition for reimbursement was the requirement that the Claimant obtain prior written consent to incur the particular expenses. That consent was given by Respondent's chief legal advisor in his letter of September 24, 1975. Once Mr. Maksym approved the purchase of the tendered insurance program, the cost of the program became a reimbursable expense by the express terms of the contract.

Claimant is hereby awarded the sum of forty seven thousand seven hundred and seven ($47,707.00) dollars.